IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARK WEBER,

       Petitioner,

v.                                                          CASE NO. 5:09-cv-374-MW-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)   Respondent filed a response and an appendix with relevant portions of the state-court record.  (Doc. 19.)  Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State-Court Proceedings

The instant Petition stems from violation of probation (VOP) proceedings in Bay County, Florida.  Petitioner pled no contest to a charge of possession of Xanax on May 12, 2006 in Case No. 06-1585-H.  He received a three-year sentence of probation on this charge.  (App. Ex. A, B, C.)  Petitioner violated his probation in August 2006 when he was charged with two counts of possession of a controlled substance, driving with a suspended license, driving under the influence with bodily injury or property damage,

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

and possession of paraphernalia.  On August 23, 2006, Petitioner pled no contest to both the VOP charge in case No. 06-1585-H, and the new-crime charges in Case No. 1658-H.  He was sentenced to two years imprisonment and three years of probation, with a consecutive sentence of five years of probation, for a total of eight years of probation.  (App. Ex. D, E, F.)

After his release, Petitioner again violated his probation in June 2008, when he was charged with possession of cocaine and possession of paraphernalia.  (App. Ex. G, H.)  On July 9, 2008, Petitioner pled no contest to VOP charges in both the "old" 2006 cases—Case Nos. 06-1585-H and 06-1658-H—as well as the two "new" charges of possession of cocaine and possession of paraphernalia (Case No. 08-1295-H). Petitioner was sentenced to five years of imprisonment on the two VOP charges and five years of imprisonment on the possession of cocaine charge, all to run concurrent.  On the misdemeanor charge, possession of paraphernalia, Petitioner was sentenced to time served.  (App. Ex. I.)  On the two VOP charges, Petitioner received 78 days of jail credit, as well as credit for the time he had already spent in prison on the original, 2006 charges.  On the new law violations from 2008, Petitioner received 78 days of jail credit. *Id.*

Petitioner filed a notice of appeal, but because he did not perfect the appeal, it was dismissed by the First District Court of Appeal.  (App. Ex. J, K, L, M.)  Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, asserting two claims of ineffective assistance of counsel: (1) Counsel failed to "file a motion for laboratory testing of evidence;" and (2) Counsel failed to inform Petitioner that his five-year sentence on the new, 2008 charges would not be reduced by

the time he had spent in prison on the old, 2006 charges. (App. Exh. N, at 8-9). The postconviction court construed Petitioner's first claim as arguing that Petitioner's trial counsel was ineffective for failing to file a motion to suppress, and denied relief on both grounds. *Id.* at 45-46. Petitioner filed motions for rehearing and a motion to amend his 3.850 petition, and the trial court denied the motions on March 23, 2009. *Id.* at 85-101. The First DCA affirmed *per curiam* without written opinion. (App. Ex. O.)

The instant Petition followed. Petitioner asserts two claims of ineffective assistance of counsel. (Doc. 1.) Respondent concedes that the Petition is timely, but opposes the Petition on the merits and on procedural grounds. (Doc. 19.)

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the claim. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005)

(quotations and citations omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11ᵗʰ Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's

decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Collateral Review of Constitutional Claims

By entering a voluntary plea, a defendant waives several rights, including the right to a jury trial, to the assistance of counsel, to raise a defense, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 563, 573 (1989). Further, a voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea, including claims of ineffective-assistance that do not attack the voluntariness of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). A plea of nolo contendre is recognized as the equivalent of a guilty plea in Florida. *See* Fla. R. App. P. 9.140(b)(2).

Because Petitioner's claims allege ineffective assistance, a review of *Strickland* is appropriate. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome." *Id*.

Further, in the guilty plea context, to show prejudice Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The requirement of a showing of prejudice in the guilty-plea context serves "the fundamental interest in the finality of guilty pleas." *Id*. at 58. The inquiry as to whether a reasonable probability exists that a defendant would have insisted on going to trial "should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id*. at 60 (quoting *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)).

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim 1: Ineffective assistance of counsel for failing to file a motion to suppress

Petitioner asserts that his trial counsel was ineffective for failing to advise him that he could file a motion to suppress Petitioner's statements to the police and the evidence that formed the basis for the 2008 charges for possession of cocaine and possession of paraphernalia. Petitioner asserts that agents from the Florida Department of Children and Families and an officer from the Bay County Sheriff's Department came to his home to ask him if he was selling cocaine while children lived at his home. (Doc. 1, at 4.) Petitioner asserts that the agents asked for permission to search his room, without first advising him that he could refuse, and that the agents searched his entire home. Agents

found a scale with cocaine residue in one of the rooms. Petitioner asserts that he "was

questioned by police but not told of his right to have counsel present during questioning

and made inculpatory admissions." *Id.* at 5. Petitioner asserts that his trial counsel

should have filed a motion to suppress the scale, on the grounds that the search violated

his Fourth Amendment rights because the agents did not have a search warrant,

because the agents exceeded the scope of the permissible search by searching the

entire home rather than one room, and because the agents did not inform him of his

right to remain silent before questioning him.

Respondent argues that this claim is unexhausted, because in his motion for

postconviction review under Rule 3.850, Petitioner never mentioned the filing of a motion

to suppress. Rather, Petitioner's first ground for relief under Rule 3.850 read:

> The council [sic] was ineffective do [sic] to the fact that he didn't try to
> investigate my case, he also didn't file a motion for labratory [sic] testing
> of evidence. I told the judge I wanted to be appointed a new attorney
> because of ineffective assistance and I was denied 2 times. I feel if I had
> a better attorney that would have helped out more it would have made a
> big diffrence [sic] on my case."

(App. Ex. N, at 9.) While Petitioner's allegations in his Rule 3.850 do not clearly state a

claim for ineffective assistance of counsel based on failure to file a motion to suppress,

the trial court liberally construed Petitioner's *pro se* filing and interpreted this claim as

asserting that "counsel was ineffective for failing to file either a motion to dismiss or a

motion to suppress said evidence." *Id.* at 46. The trial court rejected Petitioner's claim,

however, because his allegations were so cursory that he provided "no details why he

believes that the search was illegal or what he believes was illegally seized." *Id.*

Accordingly, it cannot be said that Petitioner "fairly present[ed]" this claim to the trial

court so that the state court could have the opportunity to fully address this claim on the

merits.  28 U.S.C. § 2254(b)(1); *Picard*, 404 U.S. at 275-76.  After the trial court denied

this claim, Petitioner attempted to amend his Rule 3.850 motion, but the trial court

denied the motion to amend on the grounds that Petitioner did not have a right to amend

a conclusory claim.  (App. Ex. N, at 101.)  This ruling was *per curiam* affirmed by the

First District Court of Appeals.  Because Petitioner never properly presented the grounds

for Claim One to the state court, the Court finds that this claim is unexhausted.

Alternatively, even if Petitioner had properly exhausted this claim, the Court finds

that Petitioner has failed to show that counsel rendered ineffective assistance by not

filing a motion to suppress that, considering the totality of circumstances, would have

been denied.  Petitioner acknowledges that he consented to a search of his home.  He

argues that "no exigent circumstances existed to deviate from the warrant requirement,"

Doc. 1, at 5, but no warrant is necessary when consent to search is given.  *Cf. Florida v.*

*Jimeno*, 500 U.S. 248, 250-51 (1991) ("[W]e have long approved consensual searches

because it is no doubt reasonable for the police to conduct a search once they have

been permitted to do so.") (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Petitioner has provided no specific facts to support a finding that his consent was

coerced.  Petitioner makes the conclusory allegation that the agents exceeded the

scope of his consent by searching additional rooms in the home, but provides no factual

support for this claim.  He does not allege that he told the agents not to search in any

other rooms or protested the search in any way.

Finally, Petitioner alleges that the agents did not inform him that he had a right to

remain silent and a right to have counsel present during questioning.  But Petitioner has

pointed to no facts that support a finding that he was "in custody" for *Miranda* purposes. *See Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (noting that *Miranda* rights attach during custodial interrogation, "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.") (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

Because a motion to suppress would have been without merit, trial counsel's performance was not ineffective. *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (if issues are non-meritorious, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel."). Further, even assuming, *arguendo*, that trial counsel's actions were deficient, Petitioner has provided no specific facts to support his conclusory allegation that if counsel had filed a motion to suppress, he would not have pled no contest and would have insisted on going to trial. Accordingly, Petitioner has failed to show that his counsel rendered ineffective assistance under *Strickland* and, therefore, Petitioner is not entitled to habeas relief on this claim.

### Claim Two: Ineffective assistance of counsel regarding potential sentence

Petitioner contends that his counsel led him to believe that his sentences on the VOP charges and the new-law violations would be concurrent and coterminous, and that he would receive credit for the time he served on the original 2006 charges towards *both* the VOP charges and the new, 2008 charges. (Doc. 1, at 7-8.) Petitioner asserts that if he had known that he would not receive credit on the 2008 charges for the time he served on the old charges, he would not have pled guilty and would have insisted on going to trial.

In rejecting this claim on postconviction review, the state court concluded that

> the transcript at the sentencing hearing refutes the Defendant's claims in Ground Two. At the hearing, the Court and counsel advised the Defendant that he would be [receiving] prior prison credit "on the old charges." *See* Transcript, pg. 5. In imposing the sentence, the Court announced that the Defendant would receive prior DOC credit on each of his 2006 case numbers. However, the Court did not make a similar announcement as to the 2008 new law violations. The Defendant did not object or otherwise indicate that this was not his understanding at sentencing. *See* Transcript*,* pg. 10-11.

(App. Ex. N, at 46.) The First District Court of Appeals affirmed the trial court's ruling. The Court finds that the state court's ruling was neither unreasonable nor contrary to clearly established federal law. The transcript of Petitioner's plea hearing reflects that there were several instances in which Petitioner's counsel and the trial judge clarified for Petitioner what his sentence would be, and how the credit for the time he had served on the 2006 charges would be allocated.

At the outset, Petitioner's counsel told the trial judge that he was "having trouble explaining to him concurrent sentences, Your Honor." *Id.* at 22. Counsel told the judge that Petitioner "feels like he's not getting credit for the time he's already spent in prison," but that counsel had told Petitioner that he would get credit "on the old charges." *Id.* The trial court judge confirmed that Petitioner "will get credit" on the old charges. *Id.* To the extent that this initial discussion might have been unclear, the trial judge and Petitioner's counsel again discussed the way that Petitioner's jail time on the 2006 would be credited when counsel stipulated that there was a factual basis for the plea for the new-law charges and the VOP charges. Specifically, Petitioner's counsel stated that Petitioner should receive 78 days of jail credit from the date of his arrest to the date of his plea. *Id.* at 26. The following exchange ensued:

> THE COURT: Okay.  And for the VOP's?
> MR. HUSBANDS [Petitioner's counsel]: The VOP's--
> THE COURT: The same thing --
> MR. HUSBANDS: The same --
> THE COURT:  – plus his prior --
> MR. HUSBANDS:  – plus prior.

*Id.* Petitioner made no objection to this exchange, which clearly stated that he would receive 78 days of jail credit on the sentence for his new-law violations and would receive 78 days *plus* the time he had already served on the 2006 charges towards his sentence on the VOPs.  Indeed, when the trial judge asked Petitioner if this arrangement was "agreeable with you," Petitioner responded that it was.  *Id.* at 26-27.  Finally, at the conclusion of the hearing, the trial judge adjudicated Petitioner guilty and handed down his sentence.  The trial judge clearly stated that Petitioner would receive "78 days credit, plus any prior DOC time," towards his five-year sentence on both the VOP charges.  *Id.* at 28.  On the new charges, the trial judge sentenced Petitioner to "a term of 5 years, 78 days credit," and made no mention of credit for prior DOC time.  *Id.*

The transcript of Petitioner's plea and sentencing amply supports the state court's finding that Petitioner's trial counsel's performance was not ineffective, because counsel stated on the record twice that Petitioner would receive credit towards his VOP charges for the time he had served on the "old charges."  These statements undermine Petitioner's assertion that his counsel misled him prior to the hearing by telling him that he would receive jail credit for the time he served on the 2006 charges towards all his sentences, the VOPs and new-law violations alike.  Even assuming *arguendo* that Petitioner's counsel had incorrectly informed Petitioner that he would receive credit towards all the new sentences, Petitioner can show no prejudice because the trial judge

clarified how the credit was to be allocated on *three* separate occasions during the hearing.  Petitioner told the trial judge that he understood the sentence and carried on with his plea.  Accordingly, Petitioner has failed to show that his counsel rendered ineffective assistance under *Strickland* and, therefore, Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 23rd day of January 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.